**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOSEPH EADS,

Plaintiff,

vs.

NURSE KINSWORTHY, et al.,

Defendant.

Case No. 1:24-cv-225

McFarland, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

This civil action is now before the Court on Defendant's motion for summary judgment (Doc. 61) and the parties' responsive memoranda. (Docs. 74, 75). For the reasons explained below, Defendant's motion is well-taken and should be granted.

### I. Background and Undisputed Facts

Plaintiff, a federal pretrial detainee at the Butler County Jail during the events at issue, brings this action under 42 U.S.C. § 1983 alleging that jail medic Timothy Kinsworthy violated his constitutional rights by (1) sexually assaulting him during a rectal/hemorrhoid examination, (2) acting with deliberate indifference to his serious medical needs, and (3) providing deficient medical care that also supports a state-law medical malpractice claim. (See Doc. 3).

Following initial screening, the Court permitted Plaintiff to proceed on constitutional claims under the Eighth and/or Fourteenth Amendments against Defendant Kinsworthy based on the alleged sexual assault and medical care, and on a related state-law claim.

The record contains the following facts:

Plaintiff was housed at the Butler County Jail as a pretrial detainee from August 2023 until January 5, 2024. (Doc.59, Ex. 3 at 12; Doc. 58 at 15-16).

On December 27, 2023, Plaintiff submitted a sick-call request complaining of swelling and pain, and jail medical staff responded that day after housing-unit officers reported Plaintiff's complaints about hemorrhoids or intestinal prolapse. (Doc. 59, Craft Aff. Ex. 1, Ex. 3 at 20.; Doc. 58, Eads Dep. Ex. 1). Plaintiff was placed on the sick call list on December 27, 2023, to be seen during sick call rounds on December 28, 2023. Plaintiff also requested three grievance forms on December 27, 2023. (Doc.58, Eads Dep at 60-61; Doc. 59, Craft Aff. Ex. 1).

On December 28, 2023, Plaintiff was seen during sick call by paramedic Jeff Blair, who documented Plaintiff's complaint of a large protruding hemorrhoid and provided hemorrhoid cream. (Doc. 58, Eads Dep. Exs.2, 3).

On December 29, 2023, Plaintiff submitted another sick-call request stating that he was in pain and bleeding from his rectum and could not use the restroom, and Medical Supervisor Fisher placed him on the sick-call list at 9:30 a.m. (Doc. 58, Eads Dep. Ex. 4).

At approximately 9:55 a.m. that morning, Defendant Kinsworthy, a paramedic/firefighter at Butler County Jail, was called to Plaintiff's housing unit for a complaint of rectal bleeding associated with hemorrhoids. (Doc. 58, Eads Dep. Ex. 5). According to Kinsworthy's affidavit and contemporaneous charting, Plaintiff walked normally, was not in distress, and had no visible blood on his person or clothing. (Doc. 59, Kinsworthy Aff. ¶ 8, 14; Doc. 58, Eads Dep. Ex. 5).

Kinsworthy first proposed examining Plaintiff in the pod's multi-purpose room, but after Plaintiff voiced privacy concerns because others might see him through the windows, Kinsworthy asked whether Plaintiff preferred to be examined in his cell, and Plaintiff agreed. (Doc. 59, Kinsworthy Aff. pp. 1-2).

In the cell, Kinsworthy instructed Plaintiff to lower his pants and underwear so the affected area could be visually examined. (Doc. 59, Kinsworthy Aff. pp 1-3).

The contemporaneous medical record reflects that Kinsworthy observed no blood on Plaintiff's body, pants, or underwear, did not observe profuse bleeding, and requested stool softener and further monitoring. (Doc. 59, Kinsworthy Aff., pp2-3). Defendant Kinsworthy's affidavit states he did physically touch Plaintiff and only visually observed Plaintiff's rectal area. Kinsworthy Aff. Id. at ¶ 14-17. Due to the lack of blood, Defendant Kinsworthy requested a stool softener be provided to Plaintiff and for his condition to be further monitored. Id. at ¶ 18. Defendant Kinsworthy informed Plaintiff of this course of treatment and left the pod shortly thereafter. Id. Defendant Kinsworthy documented his examination and encounter with Plaintiff on the BCJ's medical charting system, and requested additional review of Plaintiff's condition, consistent with the information relayed to Plaintiff. Id. at ¶ 19.

Plaintiff testified that he filed a grievance against Defendant Kinsworthy about 20 minutes after he left the pod. (Doc. 58, Eads dep. at p. 92). The grievance stated that Defendant Kinsworthy "sent [him] to [his] room on the pod" which made him uncomfortable because "everyone was watching me." (Doc. 58, Eads Dep. Ex. 6). The grievance further stated that Kinsworthy told him "all you gotta do is push them back in

there thin that's when he push his finger in my ass pushing my guts back in, He hurt me there was so much pane." (Doc. 58, Ex.6).

The record further shows that the Butler County Sheriff's Office conducted criminal and internal investigations. (Doc. 59, Craft Aff., p. 1). On December 30, 2023, Plaintiff was interviewed by Detective Chris Morris with the Butler County Sheriff's Office. (Doc. 56, Eads Interview).

Plaintiff was transported on December 30, 2023 to Kettering Health Hamilton, where he was examined by a SANE nurse and physician and underwent a sexual assault exam and rape kit. (Doc. 59, Craft Aff. Ex. 2; Doc. 59, Ex. 1 at p. 23). The medical records list the reason for visit as "reported sexual assault" and "hemorrhoids," but the physical exam and subsequent DNA testing revealed no evidence of sexual assault and no DNA foreign to Plaintiff. (Doc. 58, Eads Dep. Ex. 7).

Inmates Tu-Shawn Hunt and Deonte Johnson each provided written statements at Plaintiff's request. However, during recorded interviews with Detective Morris both witnesses stated that they did not actually observe Defendant insert fingers into Plaintiff's rectum or otherwise physically contact him. Hunt Interview, Doc. 56, 3:30-35. Johnson expressly explained that his written account was based on Plaintiff's description rather than personal observation. (Doc. 56, Johnson Interview, 5:05-12).

An internal investigation was also conducted by Sergeant Ryan Hensley of the BCSO investigations division beginning on January 2, 2024. Both Detective Morris and Sergeant Hensley concluded that there was no evidence to substantiate Plaintiff's allegation of sexual assault and that Defendant Kinsworthy had not engaged in misconduct.

Defendant now moves for summary judgment under Rule 56, arguing that the summary-judgment record does not support any constitutional or state-law claim and that he is entitled to qualified immunity. (Doc. 61). Plaintiff ultimately filed a 110-page memorandum in opposition after prior extension requests had been denied. (Doc.71). Defendant asserts that Plaintiff's response was untimely and grossly over the applicable page limits.

The undersigned agrees that Plaintiff's opposition was filed after the Court had denied further extensions and that the memorandum far exceeds the ordinary page limitation imposed by Local Rule 7.2. The Court also denied requests to extend the summary-judgment response deadline on October 31, 2025 and December 9, 2025, yet Plaintiff later filed a 110-page opposition without leave of Court on December 15, 2025. (See Doc. 70, 73, 74).

A pro se litigant is not excused from compliance with readily understandable procedural rules or court-imposed deadlines. However, given the Sixth Circuits "strong preference for trials on the merits," and because Defendant has addressed the substance of Plaintiff's filing in reply, the response will be considered. However, even considering Plaintiff's arguments and evidentiary references liberally in light of his pro se status, the undersigned finds that Defendant's motion is well-taken and should still be granted on the merits.

**III. Analysis**

*A. Standard of Review*

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49, 106 S.Ct. 2505. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. Id. at 252, 106 S. Ct. 2505.

*B. Defendant's motion for Summary Judgment is well-taken*

Defendants contend that they are entitled to judgment as a matter of law because Plaintiff has failed to adequately allege any viable claim for liability under the Eighth and/or Fourteenth Amendment, or any state law theory. As such, Defendant argues that he is entitled to qualified immunity. The undersigned agrees.

*1. Fourteenth Amendment*

As noted above, Plaintiff alleges Defendant Kinsworthy violated his constitutional rights by sexually assaulting him while examining his hemorrhoids while in the Butler County Jail. Because Plaintiff was a pretrial detainee at the time of the events, any claim

for constitutionally inadequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) ("the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons" and the Fourth Amendment applies to free citizens, but "[w]hen a citizen does not fall clearly within either category—e.g., pretrial detainees—the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force.").

To succeed on this claim, Plaintiff must produce evidence that he had a sufficiently serious medical need and that Defendant acted deliberately and recklessly in the face of an unjustifiably high risk of harm that was known or so obvious it should have been known. *See Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 757–58 (6th Cir. 2022); *Brawner v. Scott Cnty.,* 14 F.4th 585, 591 (6th Cir. 2021). A sufficiently serious medical need is one that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Helphenstine v. Lewis Cnty*., 60 F.4th 305, 317-18 (6th Cir. 2023). Even viewing the record favorably to Plaintiff, Defendant is entitled to judgment as a matter of law with respect to this claim.

The record shows that Plaintiff's complaints were repeatedly addressed by jail medical staff over a brief period. Notably, Defendant Kinsworthy examined Plaintiff on December 29, 2023, less than an hour after Plaintiff made a sick-call request. See Eads Dep. Exh. 5, Doc. 58-5, PageID # 620.

The record does not support a finding that Kinsworthy recklessly disregarded a serious medical risk. Kinsworthy assessed Plaintiff, observed no visible bleeding or signs

of acute distress, documented the encounter, and requested stool softener and continued monitoring. Id. Plaintiff argues that his hemorrhoids and bleeding required different or more aggressive care, but disagreement with the chosen course of treatment does not establish a constitutional violation. *Woods, v. Aramark Correctional Services, et a*l., No. 22-CV-4420, 2025 WL 4956722, at *5 (S.D. Ohio Nov. 21, 2025); citing *Rhinehart v. Scutt*, 894 F.3d 721, 744 (6th Cir. 2018).

Defendant also cites authority holding that hemorrhoids and similar symptoms do not satisfy the objective component of a deliberate-indifference claim, and nothing in Plaintiff's opposition identifies evidence from which a jury could reasonably conclude otherwise on this record. *See Mallory v. Bolton,* 2021 U.S. Dist. LEXIS 157809 at * 8 (W.D. Kent. Aug. 20, 2021) (finding plaintiff's allegations of rectal bleeding for several weeks that created a painful and uncomfortable condition did not satisfy the objective component of a medical deliberate indifference claim).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's medical-care/deliberate-indifference theory.

*B. Sexual-assault claim*

Plaintiff also contends that Kinsworthy sexually assaulted him during the December 29 examination. As noted by Defendant Kinsworthy, the Sixth Circuit has held that, regardless of pretrial status, any claim for sexual assault in a correctional setting is properly analyzed under the Eighth Amendment. *See Carnes v. Hall*, 665 F. Supp. 3d 831, 843 (E.D. Ky. 2023); *Rafferty v. Trumbull Cnty*., 915 F.3d 1087, 1095 (6th Cir. 2019);, 2023 U.S. App. LEXIS 25579 at *5-6, (6th Cir. 2023). Under the Eighth Amendment, Plaintiff is required to satisfy the objective and subjective component. See *Rafferty,* 915 F.3d at

1094. The objective component requires the pain inflicted to be "sufficiently serious." Id. However, the United States Supreme Court has noted that "not every malevolent touch by a prison guard gives rise to a federal cause of action." Id., *quoting Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). The Eighth Amendment only protects prisoners from conduct that is "repugnant to the conscience of mankind." Id.

Here, Defendant has produced evidence that no physical contact occurred during his examination of Plaintiff. See Kinsworthy Aff. Namely, Kinsworthy swore that he performed only a visual exam, his chart note is consistent with that account, and the subsequent criminal and internal investigations found no evidence of misconduct. (Doc. 59, Kinsworthy Aff. pp. 1-2. See also Doc 58, Eads Dep. Ex. 7, Doc.59. Craft Aff.).

Next, the objective evidence undermines Plaintiff's accusation. Plaintiff was taken to the hospital the next day for a sexual-assault examination and rape kit, and the laboratory testing identified no foreign DNA profile. (Doc. 58, Eads Dep. Ex. 7). Moreover, other officers did not see any contact and inmate Johnson's interview materially retreated from his written statement by acknowledging that he did not actually see a finger inserted and instead inferred what had happened after speaking with Plaintiff. (Doc 56, Warner Interview; Johnson interview).

Notably, Plaintiff's own accounts materially shifted over time. In this regard, Plaintiff gave inconsistent versions about the wording of Defendant's statements, the length of the encounter, whether and when he protested, the position of officer Warner, and what others could have seen or heard. (Doc. 58, Eads Dep at 92; Exs. 1, 2, 3, 6; Doc. 66, Eads interview).

Here, Plaintiff's allegation of sexual assault is unsupported by competent evidence sufficient to allow a reasonable jury to find that Kinsworthy intentionally touched Plaintiff in a sexual manner, acted for a sexual purpose, or otherwise engaged in conduct that was objectively serious and subjectively culpable under the governing constitutional standards. Summary judgment therefore should be entered for Defendant on Plaintiff's sexual-assault claim.

*C. Fourteenth Amendment due-process/privacy theory*

To the extent Plaintiff attempts to recast the same incident as a substantive due process or privacy violation under the Fourteenth Amendment, such a claim fails as a matter of law. As detailed above, the record does not support a finding that Defendant engaged in conduct so brutal, inhumane, malicious, or conscience-shocking as to violate substantive due process.

*D. Qualified immunity*

Defendant Kinsworthy also argues that he is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed. 2d 565 (2009). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271, (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231, 129 S.Ct. 808. Here, Defendant is entitled to qualified immunity in his individual capacity on the record presented because Plaintiff has failed to show that he violated any clearly established constitutional right of which a reasonable person would have known.

*E. State-law claims*

Because Plaintiff's federal claims should be dismissed, this court should also decline to exercise supplemental jurisdiction over any pendant state claims. 28 U.S.C. § 1367(c)(3); see *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ...").

**VI. Conclusion**

In light of the foregoing, **IT IS RECOMMENDED THAT** Defendant Kinsworthy's motion for summary judgment (Doc. 61) be **GRANTED;** all pending motions (Docs. 76,

77) be **DENIED as MOOT**; and judgment be entered in favor of Defendant Kinsworthy on all claims asserted against him and this matter be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOSEPH EADS,

Plaintiff,

vs.

NURSE KINSWORTHY, et al.,

Defendant.

Case No. 1:24-cv-225

McFarland, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).